## ASSIGNMENT OF ERRORS

**1.)   THE TRIAL COURT ERRED WHEN IT DENIED THE MOTION FOR NEW TRIAL AND/OR MOTION FOR POST JUDGMENT VERDICT OF ACQUITTAL.**

**2.)   THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.**

**3.)   THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S BATSON MOTION.**

**4.)   PETITIONER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BEFORE, DURING , AND AFTER TRIAL.**

**5.)   THE TRIAL COURT ERRONEOUSLY APPLIED INAPPROPRIATE STATUTORY LAW TO DENY RELIEF.**

### SUMMARY OF THE CLAIMS

Petitioner's claims are founded upon "structural error" and a clear violation of the fundamental principles set forth in the United States Constitution which resulted in the unconstitutional conviction of one who is probably innocent. **Murrary v. Carrier**, 106 S.Ct. 1639, 2649 (1986).

### LAW AND ARGUMENT

### ASSIGNMENTS OF ERROR NOS. 1 & 2

In reviewing the sufficiency of the evidence to support a criminal conviction, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the Court to determine whether the evidence is minimally sufficient. A complete reading of the transcript of this trial shows that the State failed to meet the burden of **Jackson v. Virginia**, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In **Jackson v. Virginia**, *supra*, the United States Supreme

26

Court set out the standard by which appellate courts are to review the sufficiency of the evidence in criminal prosecutions:

> ...the relevant question is whether, after viewing the evidence in a light most favorable to te prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

This standard was adopted by the Louisiana Supreme Court in **State v Matthews**, 375 So.2d 1165 (La. 1979). In **State v.Dixon**, 620 So.2d 904 (La. App. 1st Cir. 1993) the First Circuit stated:

> The standard of review for sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.

Further, La. R.S. 15:348 provides the rule as to circumstantial evidence:

> ...assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.

Ultimately, all of the evidence in the record, viewed in a light favorable to the State, must satisfy the reviewing court that a rational trier of fact could have found the defendant guilty of the crime for which he was convicted, beyond a reasonable doubt. **State v. Perow**, 616 So.2d 1336 (La. App. 3d Cir. 1993). The circumstantial evidence rule is a component of this reasonable doubt standard. On appeal, the issue is whether a rational trier of fact, viewing the evidence in a light most favorable to the state, could find that all reasonable hypotheses of innocence were excluded. In the case sub judice, all reasonable hypotheses of innocence **were not excluded**. Due to grossly ineffective assistance of counsel, the triers of fact were precluded from viewing the evidence properly because Petitioner did not have counsel **dedicated to his clients rights under our Adversarial System of Justice**, and because counsel had another obvious defense (insanity) and

27

didn't submit the evidence at all.   Defense counsel opted to forego an insanity defense being fully

aware of defendant's psychiatric history and evidence in support.   Mr. Sylve was convicted solely

upon the unsubstantiated testimony of A.E.   A.E. gave several stories about what occurred between

her and Mr. Sylve.   At each telling, her story got bigger.   The first time, she spoke of Mr. Sylve

doing something to her was in her diary.   There she indicated that she disliked Mr. Sylve

immensely and that he had done something bad to her, but she said that she would not characterize

what occurred as sex. (Defense Exhibit 5).   Therefore, even assuming some sort of sexual conduct

occurred, at this telling it was presumably not intercourse and therefore, Mr. Sylve should not have

been found guilty of aggravated rape.   A.E. told a more elaborate tale to Melody Johnson in the

videotaped interview.   There she said that sexual intercourse had occurred four or five times in

approximately a three year period.   She said that she had seen Mr. Sylve's penis but that it had no

distinguishing or peculiar characteristics.   The only explanation is that A.E. didn't see it and that

she was pursuaded by her mother to continue lying in hopes of receiving financial benefit.   In fact,

Mr. Sylve is scarred in such a manner that it would be immediately apparant to **"anyone"** having

a slight glance at his penis.   Even at the slightest of a glance, an African-American male with

black skin having half of his penis   "pink" as a result of severe burns is impossible not to notice.

 (Defense Exhibit 17).   Mr. Syle's penis is such an anomaly that for A.E. to testify that she had

seen it and not recognized such an anomaly is a lie of such immense proportion as to shock the

conscience.   At the time she was examined by Dr. Scott Benton, **(who happens to be one of the**

**most respected experts in the field of child sexual abuse in the State of Louisiana)** A.E.'s

story now included allegations of anal intercourse.   This clearly contradicts her answer to Ms.

Johnson on the videotape in which she indicates that the only other touching which occurred was

28

when the defendant rubbed her private part with his hand.  Finally, at trial, A.E. indicated that **it was more than ten times**.  She further indicated that the reason she remembered that he had anal intercourse with her was that it hurt worse than anything else; however, she could recall no details about where this act occurred or when.  (R. 787-788).  How is it possible that A.E. endured such pain but failed to include it in her  videotaped interview with Ms. Johnson?  A.E.'s mother filed a civil lawsuit in connection with these events seeking money damages from Mr. Sylve.  (Defense Exhibit 10).  At trial, A.E. acknowledged that her mother had filed a civil suit against Mr. Sylve in an attempt to get money from the defendant.  Upon being shown the petition, she refused to acknowledge that she had joined her mother's lawsuit **despite being shown a copy of a petition which appeared to bear her signature**.  (R. 771).

The defense presented a number of medical records, from as far back as 1989, in which Mr. Sylve  had  indicated  to  various  doctors  that  he  was  impotent.   (Defense Exhibits 13-15).   Mr. Sylve's wife, the natural grandmother of A.E., acknowledged that her husband had been impotent for years.  Ms. Sylve indicated a number of times that she believed that her daughter, A.E.'s mother, was using her daughters to try and get money from defendant, who had received a fairly large sum of money from Veterans benefits and an injury suit.  (R. 807).  She further indicated that the disfigurement of defendant's penis had existed as long as she had known him.

The evidence in this case **"clearly"** shows that even after supposedly being raped over ten times both vaginally and anally by an adult male, A.E. (a child)  suffered no lasting physical trauma nor physical signs of being repeatedly raped.  The only evidence on which a jury could rely to find Mr. Sylve guilty, was A.E.'s story, which the record shows changed and became more elaborate with each telling.   How could "any" jury not factor in all of the evidence which defies

A.E.'s story?   There was also medical and physical evidence presented to show that Mr. Sylve was incapable of performing the acts for which he stands convicted.   To be sure, **there is no plausibale explanation** for A.E.'s normal gynecological exam which includes a finding that her hymen was intact (R. 630-631) **(In other words, she was a virgin),** or her failure to note the marked deformity of Mr. Sylve's penis had she seen it as she alleged.   It is ludicrous that **any juror** would believe that a child of A.E.'s age was repeatedly (over ten times) raped vaginally and anally by an adult male when one of the State's most respected experts in the field of child sexual abuse testified that A.E. had a **normal gynecological exam and found that her hymen was intact**. (R. 630-631) **In other words, she was a virgin.**   In essence, the jury believed that everyone, **except A.E., in spite of the physical evidence which was attested to by one of the State's most respected experts in this field, was telling lies.**   This is not the standard of review for sufficiency of the evidence enunciated by **Jackson v. Virginia**, *supra*, to uphold a conviction, and resulted in the unconstitutional conviction of one who is probably innocent.   **Murrary v. Carrier**, 106 S.Ct. 1639, 2649 (1986).   Petitioner did not have a fair trial producing a just and reliable result.   As such, defendant's conviction and sentence should be reversed by this Honorable Court.

## LAW AND ARGUMENT
## ASSIGNMENT OF ERROR NO. 3

Defense counsel made a timely Batson Challenge when the State exercised two challenges against the only two potential African-American jurors who were questioned.   The trial judge denied the challenges.

In **Batson v. Kentucky**, 476 U.S. 79, 96-98, 90 L.Ed.2d 69, 106 S.Ct 1712 (1986), the

Supreme Court established a three-step test for determining whether a prosecutor has exercised

peremptory challenges in a manner that violates the Equal Protection Clause.

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

> As noted above, in step two of the **Batson** analysis the burden is on the party exercising the peremptory challenge to come forward with a neutral explanation for the challenge in question. **Batson**, 476 U.S. at 97. "A neutral explanation in [this] context...means an explanation based on something other than the race of the juror." **Hernandez**, 500 U.S. at 360 (plurality opinion). The Supreme Court has made clear that, in this second stage of the **Batson** analysis, the court is not to pass on the plausibility of the explanation offered, only its facial neutrality. **Purkett v. Elem**, 514 U.S. 765, 768-69, 131 L.Ed.2d 834, 115 S.Ct. 1769 (1995) (per curiam)

> If the challenging party articulates a facially neutral reason for the challenge in question, the trial court must then determine if the objecting party has carried it's burden of proving "purposeful discrimination." **Hernandez**, 500 U.S. at 363. Discriminatory purpose "implies that the decisionmaker...selected...a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group." Id at 360 (quoting **Personal Adm'r of Mass v. Feeney**, 442 U.S. 256, 279, 60 L.Ed.2d 870, 99 S.Ct. 2282 (1979)(alterations in **Hernandez**). Only in this third step does "the pursuasiveness of the [facially nuetral] justification become relevant..." **Purkett**, 514 U.S. at 768.

> **United States v. Moore**, 173 F.3d 847, 1999 U.S. App. LEXIS 3289 at pp. 2-3, (2d Cir. Conn. 1999); writ denied **Moore v. United States**, 527 U.S. 1029, 144 L.Ed.2d 785, 119 S.Ct. 2383, 1999 U.S. LEXIS 4336, 67 U.S.L.W. 3772 (1999)

In the case sub judice, the jury venire contained only two black males. The State used

peremptory strikes against each of these jurors. The defense objected on both occasions and made

a **Batson** challenge. At the time of the first challenge, the prosecution struck Clarence Landor,

Jr., who was the only African-American on the panel. Defense counsel objected and asked that

the prosecutor be required to state his reason under **Batson**. The court indicated that it agreed with

the prosecution that no pattern of discrimination had been shown.  Nonetheless, the prosecutor offered, by way of explanation, that the juror had acknowledged that he had been acquainted with the defendant's wife thirty or fourty years ago.  The trial court, while noting that no explanation was really required at that point, indicated that the explanation was acceptable and allowed the peremptory challenge. (R. 433-434).  The prosecution later struck Andre Charbonet, the only other black male who was called for questioning.  Again, defense counselobjected noting that he was the only remaining potential black juror and that his absence defendant's right to be tried by a "representative jury" was denied.  The prosecutor indicated, by way of explanation, that the juror had said he would require more than the victim's testimony to convict defendant.  The defense correctly pointed out that the juror's response dealt with how he would evaluate that witnesss' testimony and the credibility of that testimony.  It did not indicate that he could not follow the law and regard that testimony as evidence, if he found it credible. (R. 533).

Mr. Sylve had only two chances to receive a trial by jury of his true peers which contained African-American males.  He was denied that possibility when the state struck both men from the jury .  The explanations provided by the state did not negate the concept that race played a part in the prosecutor's decision, and he did not have a fair trial producing a just and reliable result.  As such, defendant's conviction and sentence should be reversed.

### ASSIGNMENT OF ERROR NO. 4

### INEFFECTIVE ASSISTANCE OF COUNSEL

It is axiomatic that the right to counsel guaranteed by the Sixth Amendment to the United States Constitution is a fundamental right which applies to the individual states through the Fourteenth Amendment.  Without counsel, the right to a fair trial itself would be of little

32

consequence.  See **United States v. Cronic**, 466 U.S.648, 655-657, 104 S.Ct. 2039-2046, 80

L.Ed.2d 657 (1984); **United States v. Ash**, 413 U.S. 300, 307-308, 93 S.Ct. 2568, 2572-2573, 37

L.Ed.2d 619 (1973); **Powell v. Alabama**, 287 U.S. 45, 68-69, 53 S.Ct. 55, 63-64, 77 L.Ed. 158

(1932), for it is through counsel that the accused secures his other rights.  **Maine v. Mouton**, 474

U.S. 159, 163-170, 106 S.Ct. 477, 483-484, 88 L.Ed. 481 (1985); **Cronic,***supra*, 466 U.S. at 653,

104 S.Ct. At 2043.

The  right to "Assistance of Counsel" encompasses the right to **effective** "Assistance of

Counsel," see, e.g., **McMann v. Richardson,** 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 25 L.Ed.2d

763 (1970), and applies to the states as a component of the right to "due process of law" secured

by the Fourteenth Amendment to the United States Constitution, see **Evitts v. Lucey,** 469 U.S.

387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

"[T]he standard for constitutionally effective assistance of counsel is not errorless counsel,

and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and

rendering effective assistance."  **Vela v. Estelle**, 708 F.2d 954, 961 (5th Cir. 1983).  "The

methodology for applying this standard involves an inquiry into the actual performance of counsel

conducting the defense and a determination of whether reasonably effective assistance was

rendered based on the totality of circumstances in the entire record."  **Id at 961.**

> "Representation of a criminal defendant entails certain basic duties.
> Counsel's function is to assist the defendant, and hence owes the client a
> duty of loyalty, a duty to avoid conflicts of interests.  From counsel's
> function as an assistant to the defendant derive the overarching duty to
> **advocate the defendant's cause** and the more particular duties to consult
> with the defendant on important decisions and to **keep the defendant
> informed of important developments in the course of the prosecution.**
> Counsel also has a duty to bring to bear such skill and knowledge as will
> render the trial an adversarial testing process."**Strickland v. Washington,
> 466 U.S. 668, 688 (1983) 104 S.Ct. 2052,  2063 (1984).**

The representation provided petitioner by his counsel fell woefully short of the "range of competency demanded of attorneys in criminal cases.  See **McMann v. Richardson**, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, ____ L.Ed.2d 763 (1970)

In order to prove conviction in violation of the right to effective assistance of counsel, petitioner must satisfy both prongs of the two-part test articulated in **Strickland v. Washington**, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To satisfy it, petitioner must show both that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." **Strickland,** 466 U.S. at 674, 104 S.Ct. 2052.

As  to the first prong, to determine whether an attorney's conduct was deficient, "[t]he court must...determine whether, in light of all the circumstances, the identified acts or ommissions were outside the wide range of professionally competent assistance." **Id. At 690, 104 S.Ct. 2052**

As to the second prong, to establish that he was "prejudiced" by his attorney's constitutionally deficient performance, petitioner must "show that there  is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Id. At 694, 104 S.Ct. 2052**.  A "reasonable probability" in this context is one that "undermine[s] confidence in the outcome."

In **Lockhart v. Fretwell**, 113 S.Ct. 836 (1993) the United States Supreme Court revisited Strickland and explained that it isn't enough for a defendant to allege that the outcome of the trial may or would have been different.  The defendant must demonstrate that counsel's errors were so serious as to deprive him of a trial, causing the result of which was unfair and unreliable. Petitioner avers that the  case sub judice presents just such an example, demonstrating that counsel's errors, in fact structural errors,  were so serious as to deprive him of a fair trial.

34

## LAW AND ARGUMENT

It is untenable that defense counsel allowed Petitioner to be tried without presentation of the dual plea of not guilty and not guilty by reason of insanity knowing full well his history of mental illness, and that medical documents existed from *the United States Department of the Navy, the Social Security Administration, and records from Ochsner Hospital.* Petitioner is diagnosed as suffering from schizophrenia, chronic, undifferentiated type with paranoid and disorganized features, and severe anxiety problems, and Petitioner has a global assessment of functioning score of 25.  The State asserted that Mr. Sylve was examined and found competent to proceed.  If this is so, the State obviously called into question Petitioner's competency to proceed and/or Petitioner's sanity at the time of the offense.  **La.C.Cr.P. art. 642** mandates that when the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution...until the defendant is found to have the mental capacity to proceed. The State asserted that Petitioner was examined in accordance with **La.C.Cr.P. art. 643.** Petitioner submits that the determination of mental capacity to proceed, in accordance with **La.C.Cr.P. art. 647,** *shall* be deterined by the court in a contradictory hearing.  Petitioner avers that no contradictory hearing was ever held due to defense counsel's grossly ineffective assistance and the Court's abuse of discretion, thus depriving Petitioner his substantive and procedural right to Due Process which mandated a contradictory hearing at which time Petitioner could present the report of the sanity commission, present other documented medical evidence of his mental capacity to proceed, his mental illness and the severity of it's symptoms in support of his defense, and during the hearing, call as witnesses medical experts to attest to or refute said medical reports, and call as witnesses the sanity commission doctors at which time they would be subject to direct

and cross-examination by the defense, Assistant District Attorney or the Court, subjecting the State's case to meaningful adversarial testing.   Defense counsel is presumed to be knowledgable of Louisiana Law.   Defense counsel was well aware of the above cited articles of the Louisiana Code of Criminal Procedure and  completely abandoned and refused to present Petitioner's substantial and viable defense.   There is no strategic decision to be claimed here by defense counsel because such a claim is ludicrous.

Petitioner's case falls on all fours with that of the decision in **Profitt v. Waldron**, 831 F.2d 1245 (5th Cir. 1987) which held that a rape defendant received ineffective assistance of counsel where his attorney did not raise an insanity defense. In *Profitt, supra*, and in the case sub judice, part of  counsel's deficient performance was based on counsel's failure to conduct a  more thorough investigation into his client's mental health.  The court chastised the attorney for opting to forego an insanity defense knowing what he did about the defendant's psychiatric history. The same circumstance is presented by Petitioner in the case sub judice.   Defense counsel was informed by Petitioner's wife and by Petitioner of his history of mental illness and treatment prior to trial.   **Defense counsel with knowledge of Petitioner's mental illness was grossly ineffective for opting to forego the substantial and viable defense of insanity.   It is untenable that Defense counsel  failed to request appointment of a sanity commission to evaluate Petitioner's competency to proceed,  and failed to enter a dual plea of not guilty and not guilty by reason of insanity, which then would allow a jury to determine if he was guilty beyond a reasonable doubt.  These are  fundamental rights guaranteed by both the United States Constitution and the Louisiana Constitution.**

Petitioner is mentally ill, and affected by a plethora of severe mental disorders and was

tried and convicted without the use of a sanity defense, or the protections and safegaurds of a sanity commission built into our jurisprudence through the Due Process Clause **demanding adequate, anticipatory, protective procedures** to minimize the risk that an incompetent person will be convicted. **Medina v. California**, ___, U.S., ___, 112 S.Ct. 2672, 2584, 120 L.Ed.2d 353 (1992); **Pate v. Robinson**, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); **Drope v. Missouri**, 420 U.S. 162, 95 S. Ct. 896, 43 L.Ed.2d 103 (1975); **Dusky v. United States**, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. 824 (1960) (per curiam); **Rafferty v. Cook**, 949 F.2d 1546, 1550 (10th Cir. 1991), cert. Denied, 112 S.Ct. 1942, 18 L.Ed.2d 815 (1992); **State v. Bennett**, 345 So. 2d 1129, 1139 (La. 1977); **State v. Nomey**, 613 So.2d 157, 161 (La. 1993).   In that event, error which under such circumstances would be grounds for reversal, cannot be brushed aside as immaterial, since there is a real chance that it might have provided the slight impetus which swung the scales toward innocence. This case should be decided by this Honorable Court because claims of **"structural errors"** should be reviewed by the lower courts when **any** evidence suggests that the Petitioner did not receive a fair trial and/or fair review of his claims.   In addition to **Profitt v. Waldron**, 831 F.2d 1245 (5th Cir. 1987),  Petitioner also cites the case of **Tillery v. United States**, 419 A.2d 970 in support of his claims.  In Tillery, the court reversed the conviction and remanded the case for a new trial.  The court explained that the test for an ineffective counsel claim required defendant to have shown that there had been gross incompetence of counsel and that incompetence had blotted out the essence of a substantial defense.  The court found that counsel's failure to have evaluated defendant's medical records and ascertained that he had been medicated at the time that the State's doctors examined him and found him sane was gross incompetence.  In the case sub judice, defense counsel was well aware of Petitioner's mental illness, had access

to numerous medical records from the United States Department of the Navy, the Social Security Administration, and Ochsner Hospital (where Petitioner was treated for shooting himself) all supporting Petitioner's mental illness, and defense counsel failed to request a sanity commission and full, fair, and adequate hearing. Better said, defense counsel failed in **every** aspect of presenting Petitioner's substantial and viable defense of insanity. It can not be deemed harmless to not present a defense, when one is clearly available and supported by written professional opinions. This is Constitutional error of the first magnitude. Each of Petitioner's claims are allegations of constitutional deprivations which Petitioner avers constitute structural defects affecting the framework within which his trial proceeded rather than simply just an error in the trial process itself. Such structural defects must be corrected whether raised at trial or not. **United States v. Cotton**, *supra*. Therefore, denying such claims by the lower courts via standardized denials **without fair review** is unconstitutional and mandates this Honorable Court's review and correction of such practices.

To be sure, **fair review** at the evidentiary hearing granted and ordered by the trial court in the matter sub judice **would include representation by counsel**. Under **La.C.Cr.P. art. 930.7 C**, the Court **shall** appoint counsel for an indigent petitioner when it orders an evidentiary hearing on the merits of a claim, or authorizes the taking of depositions or requests admission of fact or genuineness of documents for use as evidence in ruling upon the merits of his claim. The transcripts from the evidentiary hearing clearly indicate that Petitioner was denied a fair hearing where with the assistance of counsel, Petitioner could have presented all of the critical Constitutional deprivations to the Trial Court's attention, and then have a fair decision rendered on the merits. If the defendant is deprived of the assistance of counsel during a critical stage after

the commencement of adverse judicial criminal proceedings, *his right to counsel is violated*. **State v. Hattaway**, 621 So.2d 796 (1993). Combined with the fact that Petitioner was convicted based on such evidence, and without the insanity defense, defense counsel's actions and/or inactions when viewed in totality were untenable.

### A.    DEFENSE COUNSEL WAS INEFFECTIVE FOR HIS FAILURE TO INVESTIGATE PETITIONER'S MENTAL HEALTH    ISSUES

It is ovious that defense counsel failed to perform adequate pre-trial investigation and discovery.  Defense counsel did not present the dual plea of not guilty and not guilty by reason of insanity when he in fact would have had all that he needed to present a viable defense.  Defense counsel utterly failed to perform pre-trial investigation and/or discovery of petitioner's mental illness and abandoned petitioner's defense.

**Defense counsel was well aware of petitioner's mental illness prior to trial.**  Failure to investigate, acquire, and present records in support is a constructive denial of counsel. Petitioner's past mental health history would prompt any defense attorney to enter a dual plea of not guilty and not guilty by reason of insanity.  A review of the record in the instant case clearly shows that defense counsel *did nothing*.

It is untenable that defense counsel allowed petitioner to be tried without presentation of the dual plea knowing full well that he had a history of mental illness. Petitioner asserts that his case falls on all fours with the decision in **Profitt v. Waldron**, 831 F.2d 1245 (5th Cir. 1987) which held that a rape defendant received ineffective assistance of counsel where his attorney did not raise an insanity defense. Although in *Profitt, supra*, part of counsel's deficient performance was based on counsel's failure to conduct a more thorough investigation into his client's mental

health, the court also chastised the attorney for opting to forego an insanity defense knowing what he did about the defendant's psychiatric history. Petitioner's case is congruent to **Profitt**. This was petitioner's only viable defense. Defense counsel's failure to perform adequate pre-trial investigation and discovery resulted in his being tried without a defense, denying his Constitutionally protected rights.

A review of the record reveals conclusively that defense counsel **failed to perform pretrial investigation and discovery.**

Counsel may not sit by thinking investigation would be fruitless, see **Powell v. Alabama**, 287 U.S. 45, 53 S.Ct. At 55.

An essential element of the performance component in an ineffective assistance of counsel inquiry is that counsel, in order to be effective, must conduct an adequate amount of legal research. **Kennedy v. Maggio**, 725 F.2d 269, 272 (5th Cir. 1985) citing **Cooks v. United States**, 461 F.2d 530, 532 (5th Cir. 1972).

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. **Strickland v. Washington**, 466 U.S. at 690-91.

Counsel has a duty to investigate all leads relevent to the merits of the case. **Nix v. Whiteside**, 475 U.S. 157, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986); **Strickland v. Washington**, 466 U.S. at688, 104 S.Ct. At 2064-65.

Petitioner is sorely aggrieved at the fact that defense counsel abandoned his defense.

It is obvious by review of the record that defense counsel **failed to do any pretrial investigation,** and subsequently deprived Petitioner of his viable defense. It is untenable that defense counsel, or anyone, having knowledge of petitioner's mental illness would not utilize

such a defense.  Failure to perform pretrial investigation and discovery precluded defense counsel

from raising   petitioner's viable defense of insanity, subsequently denying petitioner his

Constitutionally protected rights.

**B.      PETITIONER DID NOT POSSESS A RATIONAL AS WELL AS A FACTUAL UNDERSTANDING OF THE PROCEEDINGS AGAINST HIM AND WAS LEGALLY INCOMPETENT TO STAND TRIAL UNDER THE DUSKY STANDARD, VIOLATIVE OF HIS CONSTITUTIONAL RIGHTS.**

At the onset, "[b]ecause competency to stand trial is an aspect of substantive due process,"

only the Constitution can mandate the "legal standard" by which to evaluate it.  **Rafferty v. Cook**,

949 F.2d 1546, 1550 (10th Cir. 1991), cert. Denied, 112 S.Ct. 1942, 18 L.Ed.2d 815 (1992),

**Bouchillion v. Collins**, 907 F.2d 589, 592 (5th Cir. 1990).

Just as obvious, the components of that "legal standard" cannot "vary according to the

views of a particular court," because [t]he Constitution can require but *one guage* against which

to determine whether, because of his mental condition, a defendant's due process rights are

violated by requiring him to stand trial."  **Rafferty**, 949 F.2d at 1550, see also **Bruce v. Estelle**,

483 F.2d 1031, 1042 (5th Cir. 1997) (competency standard "must be national in application") and

**Noble v. Siegler**, 351 F.2d 673, 677 (8th Cir. 1965) (same).  The Supreme Court expressed that

standard in **Dusky v. United States**, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. 824 (1960) (per curiam)

> "[I]t is not enough for the District Judge to find that the 'defendant [is]oriented to time and place and [has] some recollection of events,' but that 'the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual undertsanding of the proceedings against him.'"

In the case sub judice, it may have well seemed that Petitioner was oriented as to time,

place, and person, and *somewhat* possessed a factual understanding of the proceedings against

him.  The remaining question thus becomes whether he had a rational understanding of those proceedings.

### C.    LEGAL DEFINITION OF A RATIONAL UNDERSTANDING

The Supreme Court in **Dusky** did not recite the facts underlying the components of it's competency test, but those facts are contained in the Circuit Court's initial opinion which the Supreme Court reversed.  See initial opinion, **Dusky v. United States**, 271 F.2d 385,, 387-89 (8th Cir. 1959)  Fortunately, the Court in **Rafferty** briefed those facts so to illuminate the Supreme Court's intent with respect to the meaningto be given 'rational understanding'.  **Rafferty at 1550.**

It started with a Doctor Stursel's testimony explaining the meaning of the medical phrase "oriented as to time, place and person":

> "This means he is able to know the day of the week, the hour, the place in which he finds hgimself geographically, and the circumstances of his present situation.  He knows he is in a court room; he knows the day of the week and the day of the year, and he knows you and his attorney and Judge Smith is the judge.    This is the orientation to person.  He knows it all."  **Rafferty at 1550-51**.

Likewise, the record reveals Defendant knew it all too: time, place, person and the offense with which he was charged; the punishment he faced, his choice of judge or jury trial, and the events  leading up to his charge.  Dr. Sturgell explained the defendant in **Dusky** also:

> "Understood what he was charged with, knew that if there was a trial it would be before a judge and jury, knew that if he was found guilty he could be punished and knew who his attorney was and that it was his duty to protect the defendant's rights...[And relayed] with substantial accuracy, information as to his past history and as to at least some of the events leading up to...the indictment..."  **Rafferty at 1551** (parebnthises added)

Notwithstanding that the defendant in **Dusky** well understood the proceedings against him, Dr. Sturgell still opined that he was competent to proceed.  Why?

"[B]ecause I do not think that he can properly *interpret* the meaning of the things that have happened. I don't think he can convey full knowledge of his actual circumstances...due to an *inability to interpret reality from unreality*...to *suspicions* of what is going on...to *confused thinking*, which is part of his mental illness." **Id at 1551**

The Supreme Court in **Dusky** announced it's legal standard for determining competency based on the above facts. In turn, the Court in rafferty carefully analyzed those same facts, and reached this conclusion:

[I]t is beyond dispute that the Supreme Court's legal definition of competency [in Dusky]...mandates the conclusion that a defendant lacks the requisite rational understanding if his mental condition precludes him from perceiving accurately, interpreting, and/or responding appropriately to the world around him." **Id at 1551** (external citations ommitted)

"*A rational understanding*" is then defined as the mental ability to perceive accurately, to inetrpret, and/or respond appropriately to the world around us. The touchstone for determining the existence of "a rational understanding" would thus be whether the person has a "*sufficient contact with reality,*" although the facts may vary from case to case. Federal Appellate Courts agree that this definition is the one Constitutional principle for judging competency.

"Although the facts in each case vary, the circuits addressing competency after **Dusky,** including our own, have used a sufficient contact with reality as the touchstone for ascertaining the existence of a "*rational understanding*" **Rafferty at 1551** (emphasis added)

Applying this standard, a review of the record in the instant case sub judice, shows that petitioner, although assumed to be oriented as to time, place, and person, did not possess a ***rational understanding*** and was not competent to proceed, violative of his 5th, 6th, and 14th Amendment rights guaranteed by the Constitution. At the evidentiary hearing afforded Petitioner, the State merely asserts that petitioner was found competent to proceed with no records or dates to

43

substantiate the State's assertion.   In fact, after a review of the record in the instant case, one could summize just the opposite.

D.   **DEFENSE COUNSEL WAS INEFFECTIVE FOR HIS FAILURE TO ACQUIRE A MENTAL HEALTH EXPERT TO ASSIST IN PREPARATION AND PRESENTATION OF THE DEFENSE.**

Defense counsel erred when he failed to file a Motion for Independent Mental Health Expert. Petitioner has a **history** of mental illness which played a pertinent role in his defense. In fact, this was a substantial and viable defense. Although the State asserts that a sanity commission was appointed by the court, a motion from defense counsel to obtain funds for an independent psychiatric evaluation was greatly needed and would have proved invaluable. An independent psychiatrist to assist with preparation and presentation of the facts regarding petitioner's competency to proceed and sanity at the time of the crime was necessitated under the provisions of **Ake v. Oklahoma**, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

The accused is entitled by statute to at least twelve witnesses at the expense of the parish. **State v. Clark,** 387 So.2d 1124, 1129 (La.1980) (could have summoned a doctor at parish expense).   In addition,"...art 739 provides a method by which he may apply to the court for additional witnesses." Id. At 1129.   However with out of state witnesses, while the application may be made on an ex-parte basis, some dangers exist that the prosecution will gain unwanted discovery. See **State v, Jackson**, 608 So.2d 949, 958 (La.1992) (with out of state witnesses, there is no work - product objection to disclosing the names of witnesses to the prosecution).   The defense must vigorously litigate to assure that this does not occur.

In **Ake v. Oklahoma**, 470 U.S., 68 71, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court recognized that indigent defendants are entitled to Independent mental health experts when their assistance "may well be crucial to the defendant's ability to marshall a defense." **Ake**, *supra*, 470 U.S. at 80. The Court conducted a Fourteenth Amendment due process analysis, Id. At 87, and held that without independent experts defendants could be denied "meaningful access to justice." **Id. At 76-77**. This was because, while jurors may disregard a defendant's testimony or a lawyers argument, experts "assist lay jurors, who generally have no training in scientific or medical matters to make a sensible and educated determination about the contested issues. **Id. 470 U.S. at 81**. By organizing...[data], interpreting in in light of their expertise, and then laying out their investigative and analytic process to the jury, the [expert] for each party enable[s the jury to make it's most accurate determination of the issue before them." Id. At 81 (emphasis added) See also **Cowley v. Stricklin**, 929 F.2d 640 (11th Cir. 1991); **Kordenbrock v. Scroggy**, 919 F.2d 1091 (6th Cir.) (en banc), cert.denied, 499 U.S. 970 (1991); **Blake v. Kemp**, 758 F.2d 523 (11th Cir.), cert. denied, 474 U.S. 998 (1985); **Smith v. McCormick**, 914 F.2d 1153 (Th Cir. 1990). This is clearly true, because jurors do listen to , are influenced by, and rely upon the testimony of such experts, a trial may be fundamentally unfair when a party is left without expert assistance. **Ake**, *supra,* 472 U.S. at 80. Calling an expert in this case was necessary because there is no indication that defense counsel has the education or experience necessary to assess relevant reports. This seems ovious because defense counsel didn't even raise the defense of insanity. It was pertinent to the defense that the finding of competency alleged by the State be clarified. Had counsel requested the assistance of an expert to assist the defense, said expert could have contributed heavily in clarifying the issues, as well as shed great light on petitioner's mental

45

illness after thorough examination.   **Petitioner avers that he was put to trial while incompetent, in that he had no rational understanding,  and but for counsel's failure to request a mental health expert to assist the defense,  the outcome regarding his competency to proceed, and more importantly, his sanity at the time of the offense would have produced a trial having a different result.**

### ASSIGNMENT OF ERROR NO. 5
### CUMULATIVE EFFECT OF COUNSEL'S
### GROSSLY INEFFECTIVE ASSISTANCE

In **Taylor v. Kentucky**, 436 U.S. 478, 487 n. 15, 98 S.Ct. 1930, 56 L. Ed.2d 468 (1978) the Court accepted the notion that several errors, none of which individually rise[s] to constitutional dimensions, may have the **cumulative** effect of denying a defendant a fair trial.  Indeed, in **Taylor** the Court reversed a state conviction upon a finding that "the cumulative effect of the potential damaging circumstances of the case violated the due process guarantee of fundamental fairness....".  In the case sub judice this is exactly what occurred.  Counsel's performance was deficient **prior to trial, during trial and thereafter,** and leaves petitioner with no other contention than defense counsel didn't have a scintilla of regard for Petitioner's constitutional rights under our Adversarial System of Justice.  The circumstances presented herein amount to more than just deficient performance.  Petitioner contends that there was grave misconduct in these proceedings denying him a fair trial.

Petitioner submits that on each and every instance complained of herein, Petitioner has demonstrated that counsel was not rendering the effective assistance of counsel as guaranteed by the Sixth Amendment.  He entrusted his life to a man who sat by idly and watched his client be convicted **on evidence which defied A.E.'s story and without presenting his substantial and viable defense of insanity, nor subjecting the prosecution's case to meaningful adversarial**

46

**testing.**   There is **more** than a  reasonable probability that the outcome of the trial would have been  different  had  counsel  performed  in  line  with  the  standard  enunciated  by  the  Sixth Amendment. *Kyles v. Whitley,* 115 S.Ct. 1555 ( 1995).

The  Supreme  Court  held  in  *Kyles,*  supra,  that  a  reviewing  court  must  consider  the **cumulative effect of all errors together as a whole** rather than evaluating each error against the other admissible evidence in order to determine if there is a reasonable probability that the errors complained of might have effected the outcome. **Kyles** at 1577, 1578;  **United States v. Bagley** , 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed. 2d 481 (1985). **Yates v. Evatt**, 500 U.S. ___, 111 S.Ct. at 1893.

Petitioner avers that defense counsel's repeated failures denied him a trial which was fair and reliable. Surely, all the errors taken as a whole, clearly demonstrate deficient performance, and it is through counsel that the accused secures his other rights.  **Maine v. Mouton**, 474 U.S. 159, 163-170, 106 S.Ct. 477, 483-484, 88 L.Ed. 481 (1985); **Cronic,***supra*, 466 U.S. at 653, 104 S.Ct. At 2043.   Defense counsel didn't bother to call an expert gynecologist to support and clarify the testimony of Dr. Benton.  Would the jury, whose actions already defy justice, have denied A.E.'s story if an additional expert testified that it was impossible to partake in acts of intercourse such as that described by A.E.with an adult male and have her hymen remain in tact?  Would the jury have denied A.E.'s story had another expert in the field of proctology been called and testified that he had examined Mr. Sylve and clarified that he was impotent?  Defense counsel's actions and/or inactions subsequently denied petitioner his right **to presentation of his defense, and subjecting the State's case to meaningful adversarial testing, subsequently rendering the trial  unfair and unreliable.**   The deficient representation provided petitioner by his counsel fell woefully short of the "range of competency demanded of attorneys in criminal cases.  See **McMann v.**

**Richardson,** 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, _____ L.Ed.2d 763 (1970). **An innocent man has been convicted. Reversal of petitioner's conviction and sentence is warranted.** This is a miscarriage of justice resulting in the conviction and sentence of one who is more probably than not, innocent, and mandates this Honorable Court's correction of such practices.

**CONCLUSION:**

In the case sub judice, defense counsel did not perform as counsel guaranteed by that of the 6th Amendment to the United States Constitution, and the Trial Court abused it's discretion. Defense counsel was ineffective from the onset of the proceedings starting from pre-trial investigation. Defense counsel failed to adequately investigate the matter of petitioner's mental illness, failed to request funds for much needed expert testimony, failed to present a defense, failed to enter the dual plea of not guilty and not guilty by reason of insanity, subsequently failing to present petitioner's only viable defense of insanity and submit the State's case to meaningful adversarial testing violative of his 5th, 6th, 8th, and 14th Amendment rights guaranteed by the constitution. The combination of defense counsel's totally ineffective assistance, the State's blatant twisting and presentation of the facts, failure to use information in it's possession pertinent to petitioner's sanity **(even if defense counsel did not pursue it)** and the trial court's abuse of discretion resulted in petitioner being tried while not having a rational understanding of the proceedings and resulted in a trial not having a fair and reliable result denying Petitioner his rights guaranteed and protected by the United States Constitution and the State of Louisiana. It is Defense Counsel's job to present petitioner's defense, but the State knowingly deprived petitioner of fundamental rights guaranteed by the United States and Louisiana Constitutions.

Defense counsel's grossly ineffective assistance, the actions and/or inactions of the

48

prosecution, the trial court's abuse of discretion, the higher Court's decisions sanctioning the trial courts's erroneous decision of significant issues of law have subjected Petitioner to a denial of his rights under the 5th, 6th, 8th, and 14th Amendments as guaranteed by the United States Constitution and reversal of Petitioner's conviction and sentence is warranted.

**PRAYER**

**WHEREFORE**, Petitioner prays that after due consideration of the facts in this matter, that his Application for Writ of Habeas Corpus be granted, and that this Honorable Court order that his conviction and sentence be reversed.

**PREPARED BY:**                                   Respectfully Submitted:

                                                   _____

**VERNON L. ORANGE   #180943**                          **JERRY L. SYLVE**
**PARALEGAL/INMATE COUNSEL**                        **#77458 WALNUT - 1**
**CIVIL LITIGATION TEAM**                    **LOUISIANA STATE PENITENTIARY**
**ANGOLA, LOUISIANA 70712**                      **ANGOLA, LOUISIANA 70712**

49

## CERTIFICATE OF SERVICE

I, Jerry L. Sylve, hereby certify that a true and correct copy of the foregoing Application for Writ of Habeas Corpus was signed and given to the Louisiana State Penitentiary Classification Officer for mailing, properly addressed and postage prepaid to the Clerk of Court for the United States District Court, Eastern District of Louisiana on this 4 day of December, 2006.


JERRY L. SYLVE
#77458 WALNUT - 1
LOUISIANA STATE PENITENTIARY
ANGOLA, LOUISIANA 70712