**UNITED  STATES  DISTRICT  COURT**
**EASTERN DISTRICT OF LOUISIANA**

JERRY L. SYLVE #77458                          CIVIL ACTION

versus                                         NO. 06-11205

BURL CAIN, WARDEN                              SECTION: E/6

### RULING ON HABEAS CORPUS PETITION

    Petitioner, Jerry Sylve, filed this Petition for Writ
of Habeas Corpus challenging the constitutionality of his
confinement pursuant to 28 U.S.C. § 2254.  He is presently
incarcerated at Angola State Penitentiary serving a life sentence
without benefit of parole, probation or suspension of sentence,
having been convicted by a jury on June 14, 2002, of aggravated
rape in violation of La.R.S. 14:42.  Upon review of the entire
record, the Court has determined that this matter can be disposed
of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).

    The record consists of Volume 1-5 from the 22nd Judicial
District Court, Parish of St. Tammany, which include pre- and
post-trial motions and hearings, transcripts of voir dire, the
trial and sentencing.  Exhibits attached to petitioner's Petition
for Writ of Habeas Corpus ("Petition") include copies of the
judgment by the Louisiana First Circuit Court of Appeal in <u>State
v. Sylve</u>, No. 2002-KA 2358 (La.App. 1 Cir. 5/9/03), 844 So.2d 421
(Table), rendered on May 9, 2003, denying petitioner's appeal;
the denial of petitioner's Writ Application to the Louisiana

State Supreme Court in No. 2003-KO-1721 on December 19, 2003 (La. 12/19/03), 861 So.2d 558; the Louisiana First Circuit Court of Appeal's denial of petitioner's application for supervisory writs, No. 2005-KW 0860, on August 8, 2005; and the Louisiana State Supreme Court's denial of petitioner's application for supervisory writs, in No. 2006-KH-0339, on August 18, 2006. These and additional post-trial pleadings are also contained in Record Volume 5, with unnumbered pages.

I.  **Factual Background**

The following facts were set forth by the Louisiana First Circuit Court of Appeal[1], found at Exhibit #1 to Petition, at pp.10-11 (pp. 2-3 of Judgment) (footnote omitted), and at R. Vol. 5.

> In August 1997, Regina Burns discovered a journal kept by her fifteen year-old daughter, A.E.  After reading parts of the journal, Ms. Burns concluded that A.E. had written how defendant, who was married to Ms. Burns' mother, had raped her.  Ms. Burns went to her mother's home in Mandeville and confronted defendant. According to Ms. Burns, when she asked defendant why he hurt her daughter, he "looked at me and he just put his head down."
>
> The following day, Ms. Burns told A.E. that she had found her journal and asked if there was anything A.E. wanted to tell her.  A.E. told her mother that defendant had raped her when she was younger.  Ms. Burns did not push her daughter for more details because she was upset.  The next day, Ms. Burns took A.E. to the St. Tammany Parish Sheriff's Office where she spoke with Detective Grant Ross, who investigated

---

[1] State v. Sylve, No. 2002-KA 2358 (La.App. 1 Cir. 5/9/03), 844 So.2d 421 (Table)

allegations of child abuse.

Detective Ross directed Ms. Burns and A.E. to the Child Advocacy Center (CAC) in Covington, which provides a place for children to give videotaped interviews when there have been allegations of abuse. Because A.E. had a twin sister, D.E., Detective Ross suggested that D.E. also be taken to CAC to give an interview. Ms. Burns took both of her daughters to CAC on August 18, 1997. While at CAC, both A.E. and D.E. were interviewed by Melanie Johnston, a counselor who worked at CAC. Ms. Johnston conducted the interviews while Detective Ross observed from another room at CAC on closed-circuit television. Detective Ross did not interview the girls prior to their CAC interview. Following their interviews, Ms. Burns was informed that A.E. had described being raped by the defendant, and D.E. had described being sexually molested by the defendant on numerous occasions when the girls were between the ages of nine and twelve years old.[] based on the information provided in these interviews and in A.E.'s journal, Detective Ross prepared an arrest warrant, which was signed by a judge on September 9, 1997. Defendant was arrested at the Gulfport Veterans Administration Hospital and returned to Covington. On October 6, 2000, after the state had requested a sanity hearing, defendant was found competent to stand trial.

## II. **Procedural Background**

On October 22, 1997, petitioner was charged by Grand Jury Indictment with one count of aggravated rape, in violation of La.R.S. 14:42, of A.E. who was a minor child under the age of 12 at the time of the offense. Record ("R"), Vol. 1, p 77. Petitioner pled not guilty at arraignment. His jury trial began on June 12, 2002. On June 14, 2002, the jury returned an 11-1 verdict of guilty as charged. At the Sentencing Hearing on July 24, 2002, prior to the sentencing the trial judge denied petitioner's post-verdict motions for a judgment of acquittal and

for a new trial.  R. Vol. 5.  Petitioner was sentenced to life in prison at hard labor, without benefit of parole, probation or suspension of sentence.  Petitioner's conviction was affirmed on direct appeal by the Louisiana First Circuit Court of Appeal on May 9, 2003;  the Louisiana Supreme Court denied supervisory writs on December 19, 2003.[2]

On July 28, 2004, petitioner filed an Application for Post Conviction Relief in the trial court, claiming ineffective assistance of counsel for failure to present a plea of not guilty by reason of insanity, and requesting an Evidentiary Hearing and appointment of counsel.  The petition was denied in open court on December 21, 2004, after an Evidentiary Hearing at which petitioner was unrepresented.  On January 14, 2005, petitioner filed his writ application with the Louisiana First Circuit Court of Appeal, which was denied on April 4, 2005, for failure to comply with the form requirements for writ applications set forth in the Louisiana Uniform Rules of the Courts of Appeal[3].  He filed a new writ application with the Louisiana First Circuit Court of Appeal on April 20, 2005, which was denied on the merits on August 9, 2005, and denied by the Louisiana Supreme Court on

---

[2]Copies of the various post-verdict transcripts, writ applications and judgments are contained in the Record, Volume 5, without page numbering for reference.

[3]Petitioner failed to include any transcripts or documentation in support of his application.

August 18, 2006.  Meanwhile, on December 8, 2005, while his first writ application was still pending, Petitioner filed a second writ application for post conviction relief in which he challenged the constitutional sufficiency of the Evidentiary Hearing held on December 21, 2004, because he was unrepresented by counsel at the hearing regarding his claim of ineffective assistance of counsel.  That petition was dismissed by the trial court as repetitive on October 12, 2006.  This petition was filed on December 4, 2006.

## III. **AEDPA Statute of Limitations**

A petitioner is generally required to bring a habeas corpus petition filed pursuant to 28 U.S.C. § 2254 within one year of the date the conviction is final.  28 U.S.C. § 2244(D)(1)(a), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  That limitation applies to this petitioner because his petition was filed after the AEDPA became final on April 24, 1996.  Lindh v. Murphy, 117 S.Ct. 2056, 2060 (1997).  The one year limitation is tolled during the periods that a properly filed petition for post-conviction relief or collateral review is pending in state courts.  28 U.S.C. § 2244(D)(2); Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998).

In Louisiana, the finality of a judgment on appeal is determined by La.C.Cr.P. art. 922 as follows: (a) within fourteen days of rendering of a judgment by any appellate court or the

Supreme Court, a party may apply for a re-hearing; (b) a judgment becomes final when the delay for application of a re-hearing has expired without an application having been made; (c) when a timely filed application for re-hearing has been made, a judgment becomes final when the application is denied; (d) if an application for a writ of review is timely filed with the Supreme Court, the appellate court judgment becomes final when the Supreme Court denies the writ application.  A conviction that has become final pursuant to La.C.Cr.P. art. 922 is considered final for purposes of 28 U.S.C. § 2254 when the time expires for a defendant to seek certiorari at the United States Supreme Court, ninety days after the decision of the Louisiana Supreme Court is final.  Johnson v. Cain, 2000 WL 14688, *1 (E.D.La. 2000), *citing* Ott v. Johnson, 192 F.3d 510, 511 (5th Cir. 1999).

Petitioner had 365 days from March 18, 2004, (ninety days after the Louisiana Supreme Court denied his writ application from the direct appeal of his conviction and sentence on December 19, 2003) to file a timely habeas petition.  Petitioner filed his first application for post conviction relief in the trial court on July 28, 2004, after 132 days of the limitations period had elapsed.  The period began to run again on December 21, 2004, when that application was denied.  His first writ application, filed with the Louisiana First Circuit Court of Appeal on January 14, 2005, was denied on April 4, 2005, for procedural deficiency.

Pursuant to 28 U.S.C. § 2244(D)(2)[4] the limitations period continued to run from December 21, 2004, until he filed a new writ application on April 20, 2005.  During that period, another 119 days elapsed for a total of 251 days.  The limitations period was tolled until the trial court dismissed his second post-conviction writ application on October 12, 2006.  Petitioner filed this federal Petition for Writ of Habeas Corpus on December 4, 2006.  Another 52 days of the limitations period had elapsed, for a total of 303 days.  His Petition was timely filed.

## IV.  **Exhaustion**

According to 28 U.S.C. § 2254(b)(1)(A), an applicant for federal habeas corpus relief must have exhausted the available state remedies.  A federal habeas petition must be dismissed if any issue raised has not been exhausted in state courts.  28 U.S.C. § 2254(b), (c); <u>Rose v. Lundy</u>, 102 S.Ct. 1198 (19820; <u>Thomas v. Collins</u>, 919 F.2d 333,334 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 2862 (1991).  For a claim to be exhausted, it must have been presented to the highest state court in a procedurally proper manner.  <u>Rose v. Lundy</u>, *supra*, 102 S.Ct. at 1202; <u>Dupuy v. Butler</u>, 837 F.2d 699, 702 (5th Cir. 1988), *citing* <u>Carter v. Estelle</u>, 677 F.2d 427, 442 n.10 (5th Cir. 1982)

---

[4]28 U.S.C. § 2244(D)(2) provides that "the time during which a *properly filed* application for post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection" (emphasis supplied).

(citations omitted).

Petitioner claims five errors of constitutional magnitude: 1) the trial court erred when it denied his motion for a new trial and/or motion for post judgment verdict of acquittal; 2) the evidence was insufficient to support the conviction; 3) the trial court erred in failing to grant his <u>Batson</u> motion; 4) ineffective assistance of counsel before, during and after trial; and 5) the trial court erroneously applied inappropriate statutory law to deny relief when it ignored the cumulative effect of the multiple errors and instances of ineffective assistance of counsel.   The first three claims were presented on direct appeal, and claims (4) and (5) were presented to the state courts in petitioner's writ applications.   Petitioner has exhausted all his of his federal habeas claims in state courts.

## V. <u>Standard of Review</u>

In this Circuit, sufficiency of the evidence claims and ineffective assistance of counsel claims in habeas petitions are reviewed as mixed questions of law and fact under § 2254(d)(1). *See* <u>Martin v. Cain</u>, 246 F.3d 471, 476 (5th Cir. 2001), reh'g and reh'g *en banc* denied, 254 F.3d 72 (2001), *cert. denied*, 122 S.Ct. 194(2001)(citing <u>Creel v. Johnson</u>, 162 F.3d 385, 395 (5th Cir. 1998 (ineffective assistance claims "present a mixed question of law and fact"), *cert. denied*, 119 S.Ct. 2027 (1999)); *and* <u>Brown v. Cain</u>, 2000 WL 34548371 *6 (C.A. 5(La))("This court has applied

§ 2254(d)(1) when reviewing the constitutional sufficiency of the evidence supporting a state court's ruling." (citing <u>Hughes v. Johnson</u>, 191 F.3d 607, 620, 621 (5th Cir.), *cert. denied*, 120 S.Ct. 1003 (2000)).  Accordingly, petitioner's habeas claims will be analyzed pursuant to the standards set forth in § 2254(d)(1).

In <u>Williams v. Taylor</u>, 120 S.Ct 1495, 1523 (2000), the United States Supreme Court articulated the appropriate standard of review for federal habeas petitions pursuant to the AEDPA as follows:

> Under 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law as determined by the Supreme Court of the United States."

<u>Williams</u>, 120 S.Ct. at 1523.  In <u>Martin</u>, the Fifth Circuit explained the Supreme Court's interpretation of this standard as follows:

> A state court decision is "*contrary to*" clearly established Supreme Court precedent if the state court: "applies a rule that *contradicts* the governing law set forth in [Supreme Court] cases"; or "confronts a set of facts that are *materially indistinguishable* from a decision of [the Supreme] Court and nevertheless arrives at a *result different* from [Supreme Court] precedent. *Id*. at 1519-20 (emphasis added).  On the other hand, a state court decision falls within the "unreasonable application" clause

>            when it *unreasonably* applies Supreme Court
>            precedent to the facts.   *Id.* at 1521.

Martin, 246 F.3d at 476 (emphasis in original), *citing* Williams,
120 S.Ct. at 1519-21.

    In this case, the trial court did not apply a rule that
contradicts the governing law set forth in Supreme Court cases,
nor did it arrive at a result different from Supreme Court
precedent based on a set of materially indistinguishable facts.
Accordingly, this Court's focus is on whether it unreasonably
applied Supreme Court precedent to the facts of this case.   The
AEDPA further codified the "presumption of correctness" that
attaches to state court findings of fact and the "clear and
convincing evidence" burden placed on a petitioner who attempts
to overcome that presumption.   28 U.S.C. § 2254(e)(2); Drinkard
v. Johnson, 97 F.3d 751, 767 (5th Cir. 1996), *cert. denied*,  117
S.Ct. 1114 (1997), *overruled in part of other grounds*, Lindh v.
Murphy, 117 S.Ct. 2059 (1997); Carter v. Johnson, 110 F.3d 1098,
1103 (5th Cir. 1997).

**VI. Analysis**

**Claim 1: the trial court erred when it denied his motion for a
new trial and/or motion for post judgment verdict of acquittal;**

**Claim 2: the evidence was insufficient to support the conviction.**

    These claims are related.   Petitioner argues that the
evidence presented at trial was legally insufficient to support
his conviction, therefore the state appellate court erred when it

failed to grant his post verdict motions for a new trial and/or a post verdict judgment of acquittal.

In reviewing claims challenging the sufficiency of the evidence, the court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 99 S.Ct. 2781, 2789 (1979).  The testimony of the victim is sufficient to establish the elements of the offense. <u>State v. Creel</u>, 540 So.2d 511, 514 (La. App. 1 Cir.), *writ denied*, 546 So.2d 169 (1989).

The portion of La. R.S. 14:42, the aggravated rape statute, applicable in this case is as follows:

> A.   Aggravated rape is a rape committed ... where the anal, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . . .
>
> (4)   When the victim is under the age of twelve years.  Lack of knowledge of the victim's age shall not be a defense.

La. R.S. 14:41A defines rape as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent."  Subpart B provides in pertinent part that "[e]mission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse,

however slight, is sufficient to complete the crime." La. R.S. 14:41.

Petitioner argues that he was wrongfully convicted based solely on the unsubstantiated testimony of the victim, A.E.[5] He argues that A.E.'s testimony was unreliable because her story became more elaborate with each telling, and because she could not describe petitioner's penis which was scarred and discolored as a result of severe burns incurred as a young man. He also argues that the state's own expert witness, forensic pediatrician Dr. Scott Benton, testified that his physical examination of A.E. revealed no evidence of vaginal or anal intercourse and that her gynecological exam was "normal" and her hymen intact, therefore she was a virgin and there was no evidence of rape. Finally, petitioner argues that the jury improperly ignored the testimony of Beverly Sylve, the defendant's wife, and Defense Exhibits 13-15, medical records indicating that he was impotent and could not have raped A.E.

A.E., her twin sister D.E., and A.E.'s mother, Regina Burns (Beverly Sylve's daughter), all testified regarding their memory of the pertinent events at the time the rapes were committed, albeit that the events occurred ten years prior to the trial.

---

[5]Petitioner also argues that the evidence for conviction was insufficient because of his counsel's ineffective assistance in failing to offer any evidence of his "insanity" to the jury. This argument is addressed *infra*.

A.E. testified that she was raped, both vaginally and anally, on a number of occasions from the time she was nine until she was twelve, during the years 1991 through 1994.  R. Vol. 4, p 753. She had not told her mother because she was embarrassed and thought that her mother would be mad and upset if she knew.  Id., pp 753-54.  She testified that she began to keep the journal when she was fifteen as a way to vent her feelings.  Id., pp 754, 765-66.  A.E. testified that she would not look at petitioner while he was raping her and that he never made her touch his penis or perform oral sex on him.  Id., pp 760, 764, 769.

Dr. Benton first examined her on October 2, 1997, when she was fifteen years and five months old.  R. Vol. 3, p 621.  Dr. Benton testified that physical findings would be affected by the passage of at least three years between the time of the rapes and the gynecological examination, particularly if the girl had experienced puberty during that time, as A.E. had. Id., p 634. He testified that "in the vast majority [of cases] where there's been a passage of a few years, we will find a normal exam."  Id. He explained that this is so for two major reasons: first, that "injuries heal"; and second, that "the pubertal process can sometimes hide the prior findings".  Id. at 634-635.  Dr. Benton further testified that when a child is raped, not only is it not unusual for that child to fail to report the rape for years, but that actually only a minority of cases are promptly reported.

-13-

Id., at p 638.  He testified that "delayed disclosure"[6] is the
result of embarrassment, fear of retribution, threats against the
child or a loved one, and the perpetrator is often a trusted
family member.  Id. at p 639.

Defense counsel cross-examined the state's witnesses
extensively.  He attempted to discredit the testimony of A.E. by
pointing out discrepancies in her story, and by suggesting that
petitioner was impotent at the time the rapes occurred and
pointing out that A.E. was unable to describe Sylve's penis.  He
suggested and that the motive for the rape allegations was Regina
Burns' attempt to get money from petitioner.

Beverly Sylve, the only witness to testify for the defense,
testified to facts that were directly contradictory to the
testimony of her daughter and granddaughters, particularly
regarding the time A.E and D.E. spent at the grandparents' house
during the time period in which the rapes occurred.  She
testified that Regina Burns knew that petitioner had money
because he had received substantial settlements in 1990 or 1991,
and he received regular disability payments.  R. Vol. 4, p 798.
She claimed that Ms. Burns was mad and had threatened to "get
back" at petitioner because he had not given her some money when

---

[6]Dr. Benton explained that "delayed disclosure" means that not only does
the child have to report, but must report to someone who can bring it to the
attention of society.  It is not enough to report it to a friend or family
member who does nothing.  Id.

she asked for it.   Id.   Ms. Sylve also testified that petitioner
had been impotent for many years, and that his penis was
discolored and scarred.   Id., pp 807-08.   The defense introduced
photographs of petitioner's penis, but offered no evidence of
his impotence other than his wife's testimony and medical records
containing petitioner's own statements to physicians that he
was impotent, made to support medical disability and damage
claims.

As the "finder of fact", the jury is entitled to make
credibility judgments.   The jurors obviously did not believe Ms.
Sylve's testimony, but accepted Dr. Benton's testimony regarding
the lack of physical evidence of rape several years after the
event, and believed A.E.'s testimony and Regina Burns' testimony.
The Court finds sufficient evidence in the record to support the
jury's decision.   Petitioner's claim of insufficient evidence has
no merit.

**Claim 3: The trial court erred in failing to grant his Batson
motion.**

Petitioner complains that the trial court erred when it
allowed the state to strike prospective jurors Clarence Landor,
Jr., and Andre Charbonnet, the only two African-American's called
during voir dire.   He argues that the prosecutor's peremptory
strikes to remove the two from the jury were in violation of the
principles set forth in Batson v. Kentucky, 106 S.Ct. 1712

(1986).  He claims that he was thus denied his only two chances to receive a trial by a jury of his true peers which contained African-American males.

The United States Supreme Court established a three part test to determine whether a prosecutor has exercised peremptory challenges in a manner that violates the Equal Protection Clause:

> [O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation. If a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful discrimination.

Purkett v. Elem, 115 S.Ct. 1769, 1770-71 (1995); State v. Duncan, 802 So.2d 533, 543 (La. 2001).  In United States v. Causey, 185 F.3d 407 (5th Cir. 1999), reh'g and reh'g en banc denied (Nov. 15, 1999), cert. denied, 120 S.Ct. 2747 (June 29, 2000), the Fifth Circuit further explained as follows:

> When the record contains an explanation for the government's peremptory challenges, this Court will review 'only the propriety of the ultimate finding of discrimination.'" United States v. Perkins, 105 F.3d 976, 978 (5th Cir. 1997)(quoting United States v. Forbes, 816 F.2d 1006, 1010(5th Cir. 1987)). Moreover, the district court's decision on the ultimate question of discrimination is a fact finding, which is accorded great deference. Id.

Causey, 185 F.3d at 412-413.

During voir dire the judge asked the members of the first venire panel if any of them knew the attorneys, the defendant, or

any of the witnesses.  Mr. Landor responded that he knew "Ms. Beverly", meaning Beverly Sylve, the defendant's wife, and witness for the defense.  R. Vol. 2, p 308.  He stated that it had been thirty or forty years since he had seen her.  When asked by the judge whether they were "real close personal friends at this time", Mr. Landor answered "No, it was just young people like loving and stuff like that."  Id.  Mr. Landor also stated that it wouldn't prevent him from being fair and impartial as a juror.  Id.  After the judge denied the state's request that Mr. Landor be stricken for cause, the state used a peremptory challenge to strike him from the jury.  Id., at p 428.  The defense immediately made a Batson challenge because the state had "struck one hundred percent of minorities of the jury." Id., at p 433.  The prosecutor stated on the record his reasoning that Beverly Sylve was represented by defense counsel as the sole defense witness, and that he did not believe that Mr. Landor could be impartial when he claimed not to have seen Ms. Syvle for thirty or forty years, but called her by her first name and recognized her immediately despite the passage of time.  Id.  The judge found the reasoning to be valid and non-racially based. Id., p 434.

During the examination of the second *venire* panel which again included only one African-American, Andre Charbonnet, defense counsel asked Mr. Charbonnet what kind of things he would

want to see for him to find that the accusations by the state's
witnesses were true in a "he said she said" situation.  R. Vol.
3, p 532.  Mr. Charbonnet responded "Some type of ... evidence to
justify what she's saying is indeed true."  <u>Id.</u>  When defense
counsel explained that testimony is evidence, Mr. Charbonnet
stated "I guess what they would have to do is convince me that
she is telling the truth and he is not...."  <u>Id.</u>  When asked what
one would look at in trying to determine credibility of a
witness, Mr. Charbonnet responded that he would look for "small
details ... things that a person is most likely to change in a
story... those are things that are inconsistent in lies." He
agreed that he would find such a witness less credible.  <u>Id.</u>, p
535.  After the judge denied a request to strike him for cause,
the state used another peremptory challenge to exclude Mr.
Charbonnet.

Defense counsel again made a <u>Batson</u> challenge, arguing that
with these two peremptory strikes used on the only two African-
Americans in the jury *venire*, the defendant had been denied a
representative jury in this case.  <u>Id.</u>, p 569.  The prosecutor
stated on the record that he liked "some aspects" of Mr.
Charbonnet, but was concerned about his comments implying that he
"would put some kind of extra burden on the victim to justify
what she says" when under the law testimony alone is evidence.
<u>Id.</u>  Again, the trial judge agreed that the prosecutor's

explanation that the peremptory strike was not race based.  <u>Id.</u>, p 570.

Petitioner argues that the explanations provided by the state in exercising these two peremptory challenges did not negate the concept that race played a part in the prosecutor's decision.  First, the petitioner did not make a prima facie case of racial discrimination regarding either of the challenged strikes.  Even if he had, the prosecutor presented sufficiently race-neutral reasons for the challenged peremptory strikes. The Court finds that the trial judge's decision to allow the peremptory strikes was a reasonable application of the law to the facts.  This claim has no merit.

**Claim 4: *ineffective assistance of counsel before, during and after trial;***

**Claim 5: *the trial court erroneously applied inappropriate statutory law to deny relief when it ignored the cumulative effect of the multiple instances of ineffective assistance of counsel.***

These claims are related.  Petitioner claims that the cumulative effect of his counsel's deficient performance before, during and after the trial denied petitioner his constitutional right to a fair trial.  He first argues that his counsel's failure to present a dual plea of not guilty and not guilty by reason of insanity, knowing of petitioner's history of mental illness, was grossly ineffective assistance.  He next argues that due to counsel's ineffective assistance and the Court's abuse of

-19-

discretion, no true contradictory hearing was held to determine his competence to proceed.  He finally argues that he was denied a "fair hearing" at the evidentiary hearing ordered and held by the trial court regarding his state ineffective assistance of counsel claim because he was unrepresented by counsel at the hearing.

The standard for reviewing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984).  As explained by the Supreme Court in Williams v. Taylor, the two part Strickland test is as follows:

> "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, [466 U.S.] 687, 104 S.Ct. 2025.
>
> To establish ineffectiveness, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2025.  To establish prejudice he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2025.

Williams, 120 S.Ct. at 1511-12.

The petitioner has raised two separate issues relating to his mental condition: 1) whether counsel was ineffective because

he did not enter a plea of not guilty by reason of insanity; and

2) whether counsel's ineffective assistance resulted in the

Court's erroneous determination that petitioner had the mental

capacity to proceed to trial and assist in his defense.

1)    Petitioner argues that counsel was ineffective when he did

not enter a dual plea of not guilty and not guilty by reason of

insanity.  He claims that this case is "on all fours" with

Profitt v. Waldron, 831 F.2d 1245 (5th Cir. 1987).  In that case,

eight months before Profitt's Texas criminal trial for aggravated

rape in 1976, an Idaho court adjudicated him insane and he was

committed to the Blackfoot Mental Hospital in Idaho.   Id., 831

F.2d at 1247.  He escaped from the mental institution and made

his way to Texas where he raped a woman.   Id.  Before his trial,

a state psychiatrist and a court-appointed psychiatrist both

examined Profitt and found him to be competent to stand trial,

and that he was sane at the time of the rape.   Id.  Prior to

these psychiatric examinations, Profitt's attorneys knew that he

had escaped from the Idaho mental hospital but failed to

investigate why he had been hospitalized.   Id.  Based on the

findings of the state's and the court-appointed psychiatrists,

his attorneys decided not to plead an insanity defense at trial -

the only defense counsel had intended to present.   Id.   Profitt

was found guilty at trial, and sentenced to 75 years in prison.

Id.

Eventually, Profitt's petition for habeas relief in federal court reached the Fifth Circuit. Considering his claim of ineffective assistance of counsel for failure to investigate his psychiatric history, the Court quoted Stickland v. Washington, as follows:

> Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Profitt, 831 F.2d at 1249, *quoting* Strickland, 104 S.Ct. 2025, 2066. The Fifth Circuit turned to a case decided in the Eastern District of Virginia to illustrate the duty of an attorney to investigate the prior mental history of a client.

> Where counsel (1) makes some exploration of the insanity defense but fails to take an obvious and readily available step which would have made a defense viable, (2) does not produce reasonable tactical reasons for not pursuing further investigation, and (3) raises no other plausible defense, courts may find ineffective assistance of counsel.

Profitt, at id., *citing* Walker v. Mitchell, 587 F.Supp. 1432, 1443 (E.D. Va. 1984)(other citations omitted). The Fifth Circuit held that Profitt had received ineffective assistance of counsel because of counsel's failure to pursue obvious inquiries that would have led to documentation of Profitt's prior adjudication as insane, especially when counsel had no other plausible defense

-22-

to present.  Profitt, at 1249.

Petitioner's case is not "on all fours" with Profitt.
First, petitioner acknowledges that his counsel knew "full well
his history of mental illness, and that medical documents
existed" from the U.S. Navy, the Social Security Administration,
and from Ochsner Hospital, many of which were generated as a
result of petitioner's disability claims.  While these documents
may well confirm his diagnosis of schizophrenia, episodes of
depression and anxiety problems, none declare or assert that he
was (or is) legally insane.[7]  This Court agrees with the
determination of the Louisiana First Circuit Court of Appeal,
which on August 8, 2004, denied petitioner's application for
supervisory writs on this issue based upon its finding that he
had "failed to demonstrate that he could have proven at trial
that he was incapable of distinguishing between right and wrong
with reference to the conduct in question because of a mental
disease or mental defect."  No. 2002-KA 2358, R. Vol. 5.

Second, an evidentiary hearing was ordered and conducted in
the trial court to discover evidence regarding petitioner's claim
of ineffective assistance of counsel for failure to present an

---

[7]La.R.S. 14:14 defines "Insanity" as follows:

> If the circumstances indicate that because of a mental
> disease or mental defect the offender was incapable of
> distinguishing between right and wrong with reference
> to the conduct in question, the offender shall be
> exempt from criminal responsibility.

insanity defense.  Petitioner argues that he was denied a fair
hearing because he was unrepresented by counsel at the hearing.
He claims that the trial judge simply assumed, without any
evidence to support the assumption, that defense counsel had made
a tactical, strategic decision to not present a not guilty by
reason of insanity defense.  He claims that had he had the
assistance of counsel, he could have presented all of the
"critical Constitutional deprivations" to the trial court in
order to get a fair evidentiary hearing, and argues that he was
entitled to appointment of counsel based on La.C.Cr.P. art.
930.7.  That statute requires the appointment of counsel "for an
indigent petitioner when it orders an evidentiary hearing on the
merits of a claim...." La.C.Cr.P. art. 930.7.  There is no
evidence that petitioner is indigent.[8]  Further, petitioner
offers no insight as to what evidence his counsel would or could
have produced in support of his claim of "critical Constitutional
deprivations" at the hearing.  None of the medical evidence he
points to supports an insanity defense.  Finally, the transcript
of the evidentiary hearing is in the Record, at Volume 5.
Petitioner was present and responsive to the judge's questions.
The prosecuting attorney confirmed the judge's recollection that

---

[8]At trial, the crux of his defense was that the accusers brought the
rape accusation in an attempt to get money from him because he had received
$300,000.00 in various settlements and received regular disability payments,
but had denied Regina Burns a $5,000.00 loan.

after petitioner was ruled competent at the Lunacy Hearing, at which he was represented by counsel, the prosecutor asked defense counsel whether a "NGBRI" plea would be presented. Defense counsel said "no". The prosecutor then stated "and on the record I believe he even asked Mr. Sylve whether or not he wanted to do an NGBRI plea and he said no." Id. This Court concludes that there is sufficient evidence to find that defense counsel's decision not to present an insanity defense was an objectively reasonable tactical decision.

Addressing the third element of the Profitt/Walker analysis, failure to present an insanity defense in this case did not leave petitioner defenseless at trial. Defense counsel vigorously pursued a plausible defense that petitioner was not guilty of rape. He attacked Regina Burns' credibility and motives by questioning why she had filed a civil lawsuit against petitioner for damages suffered by A.E. and D.E., and suggested that she convinced A.E. to claim rape to get money from petitioner. He challenged A.E.'s testimony on cross examination, pointing out that her story changed over the years, that she did not notice that petitioner's penis was scarred, and arguing that he could not have raped her as she claimed because he is impotent.

That the defense was unsuccessful does not mean that counsel's representation fell below an objective standard of reasonableness.

> "[U]nder our adversary system, once a
> defendant has assistance of counsel the vast
> array  of trial decisions, strategic and
> tactical, which must be made before and
> during trial rest with the accused and his
> attorney.  The fact that a particular
> strategy is unsuccessful does not establish
> ineffective assistance of counsel.

State v. Folse, 623 So.2d 59, 71 (La.App. 1 Cir. 1993).  This

Court finds that counsel's failure to present a plea of not

guilty by reason of insanity was objectively reasonable and

counsel's performance was not deficient.

 2)  Petitioner next claims that a determination of his mental

capacity was not made at a truly contradictory hearing as

required by La.C.Cr.P. art. 647, due to counsel's ineffective

assistance and the court's abuse of discretion.  He argues that

he was incompetent to proceed to trial because is diagnosed as

suffering from schizophrenia, chronic undifferentiated type with

paranoid and disorganized features, and severe anxiety problems,

and has a global functioning score of 25.  *See* Petition, p 35.

 "While a court is permitted to receive the aid of expert

medical testimony on the issue of a defendant's mental capacity

to proceed, the ultimate decision of competency is the court's

alone."  State v. Levy, 700 So.2d 1283, 1284 (La. App. 1 Cir.

9/23/97), *citing* La. C.Cr.P. art 647 *and* State v. Pravata, 522

So.2d 606, 610 (La.App. 1 Cir.), *writ denied*, 531 So.2d 261 (La.

1988).  The ruling of the trial court on a defendant's mental

-26-

capacity to proceed is entitled to great weight.  <u>Id.</u>   Under Louisiana law the reports of the doctors appointed to a Lunacy Commission are considered *prima facie* evidence of the facts recited in the report, and of the correctness of the findings of the Commission.  La. R.S. 15:425.

At a hearing for several other motions[9] on August 17, 2000, at which petitioner was represented by counsel, the state moved for a Sanity Hearing.  R. Vol. 1, p 43.  Defense counsel objected.  The Court granted a Stay Away Order, and granted the Lunacy Hearing[10], ordering that the defendant remain in jail until he was examined by the doctors before he would be allowed to bond out.  <u>Id.</u>, p 134.  A Lunacy Hearing was held on October 6, 2000, at which petitioner was present, represented by counsel. <u>Id.</u>  According to the Court's Minute Entry:

> ... the State and the Defense submitted the record to the Court based on the information contained in the written reports of Doctors Rafael Salcedo and John Thompson, Jr., whereupon Court reviewed the letters and Court found the defendant competent to proceed.

<u>Id.</u>

Petitioner argues that his counsel was ineffective in his

---

[9]The matter was before the Court on the state's Motions for Stay Away Order, to Increase Bond, and for Detention Hearing.  Defense counsel did not object to the Stay Away Order.  The Extract of the Court's Minute Entry referred, apparently alternatively, to a Sanity Hearing and a Lunacy Hearing.

[10]See R. Vol. 1, p 45, Motion and Order for Lunacy Examination, pursuant to La.C.C.P. arts. 643, 645.

representation because the Lunacy Hearing did not provide meaningful adversarial testing as required by La.C.Cr.P. art. 647.  Petitioner has offered no evidence that counsel could have presented to the trial court that might have changed the trial court's determination that he had the mental capacity to proceed to trial, to understand the judicial proceedings, and to assist in his defense.  The Record includes a medical report of the Veterans Administration Medical Center in Gulfport, Mississippi, dated September 18, 1997, stating that petitioner's schizophrenia had been controlled by medication (Haldol) for many years and that he showed no signs of schizophrenia at that time, and that he had a global functional capacity assessment of 85.  R. Vol. 1, p 132.

Because petitioner cannot meet the first prong of the <u>Strickland</u> standard for showing ineffective assistance of counsel by demonstrating that his counsel's representation was not objectively reasonable, it is unnecessary to reach the second prong to consider prejudice.  Claims 4 and 5 have no merit.

**<u>Conclusion</u>**

In his federal habeas petition, petitioner claims that his trial and the subsequent appellate review of his conviction were rife with structural errors which resulted in a miscarriage of justice.  This Court found no errors, structural or otherwise, and no miscarriage of justice.

Accordingly,

**IT IS ORDERED** that Jerry Sylve's Petition for Writ of Habeas Corpus challenging the constitutionality of his confinement pursuant to 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 23rd day of _____September_____, 2008.

_____
United States District Judge